**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY


TIMOTHY BALDWIN,         :

                                Civil Action No. 10-0530 (RMB)

             Petitioner,    :

             v.            :    **OPINION**

FEDERAL BUREAU OF PRISONS,  :
et al.,

            Respondents.   :


**APPEARANCES:**


Petitioner <u>pro</u> <u>se</u>
Timothy Baldwin
Fairton Federal Correctional Institution
P.O. Box 420
Fairton, NJ 08320


**BUMB**, District Judge

    Petitioner Timothy Baldwin, a prisoner currently confined at the Federal Correctional Institution at Fairton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The named respondents are the Federal Bureau of Prisons and Warden Paul Schultz.

---

    [1] Section 2241 provides in relevant part:

    (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
    (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Because it appears from a review of the Petition that Petitioner is not entitled to issuance of the writ, the Court will dismiss the Petition.  See 28 U.S.C. § 2243.

I.   BACKGROUND

Petitioner Timothy Baldwin pleaded guilty, in the United States District Court for the Northern District of Ohio, to possession of marijuana with the intent to distribute, in violation of 21 U.S.C. §§ 851, 841(a)(1), and (b)(1)(c), and to being a felon in possession of a firearm, in violation of 18 U.S.C. § 924, and 922(g).  See United States v. Baldwin, Criminal No. 06-408 (N.D. Ohio).  Petitioner was originally sentenced to a total term of imprisonment of 120 months.  Petitioner alleges that he received a two-level bump at sentencing for a firearm found inside the basement crawl space, pursuant to U.S. Sentencing Guideline 2D1.1(b)(1).  Some time later, in response to a Motion to Reduce Sentence pursuant to Federal Criminal Rule 35, Petitioner's sentence was reduced to a total term of imprisonment of 77 months, pursuant to which he is presently confined.

Petitioner has submitted this Petition alleging that he is preparing to participate in the 500-hour Residential Drug Abuse Treatment Program and challenging the Bureau of Prisons

notification to him, pursuant to Program Statement 5162.05,[2] that he will not be eligible for a reduction of sentence upon successful completion of the program because of the sentencing enhancement under U.S.S.G. 2D1.1(b)(1).  Petitioner argues that Program Statement 5162.05 was implemented in violation of the Administrative Procedure Act, because it is "arbitrary and capricious," because the Bureau of Prisons does not have authority to pass a rule categorically excluding certain prisoners from early release, because the BOP did not follow the required "notice and comment" procedures in implementing its regulations, because the BOP does not have authority to deny sentence reductions for prisoners with a 2D1.1(b)(1) sentencing enhancement, and because it is a violation of equal protection and due process to apply the regulation differently to prisoners outside of the Ninth Circuit, which has invalidated the BOP regulation.  See Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008).  Petitioner does not suggest that his offense does not fit within the Program Statement exclusion or that the Program Statement has otherwise been incorrectly applied to him.

Petitioner asks this Court to order the Bureau of Prisons "to reconsider Petitioner's request for a sentence reduction

---

[2] Petitioner incorrectly cites to Program Statement 3621(e)(2)(B).  The governing Program Statement is Program Statement 5162.04, which implements the early release program created by 18 U.S.C. § 3621(e)(2)(B).

after successful completion of RDAP without regard to Program Statement 5162.05 or to any sentencing enhancement(s)." (Petition, Conclusion.)

Petitioner acknowledges that he has not exhausted his administrative remedies.[3]

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

_____

[3] In general, the BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  <u>Id.</u>  Response times for each level of review are set forth in 28 C.F.R. § 542.18.  Appeal to the General Counsel is the final administrative appeal.  <u>Id.</u> If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

4

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief.  See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989).  See also 28 U.S.C. §§ 2243, 2255.

### III.  THE RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM

In 1990, Congress required the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  Crime Control Act of 1990, Pub.L. 101-647, § 2903, 104 Stat. 4789, 4913 (codified as amended at 18 U.S.C. § 3621(b)).  In 1994, Congress amended the statute to provide an incentive for prisoner participation.  The incentive provision reads:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a

5

> treatment program may be reduced by the Bureau of
> Prisons, but such reduction may not be more than one
> year from the term the prisoner must otherwise serve.

Violent Crime Control and Law Enforcement Act of 1994, Pub.L.

103-322, § 32001, 108 Stat. 1796, 1897 (codified at 18 U.S.C.

§ 3621(e)(2)(B)).

The Bureau published a regulation to implement the early

release incentive one year later.  Congress did not define, by

statute, the term "nonviolent offense."  By regulation and

Program Statement, the Bureau determined to rely upon the

definition of "crime of violence" contained in 18 U.S.C.

§ 924(c)(3).  Thus, the Bureau considered ineligible for early

release those offenders convicted of a felony that "has as an

element the use, attempted use, or threatened use of physical

force against the person or property of another, or ... that by

its nature, involves a substantial risk that physical force

against the person or property of another may be used in the

course of committing the offense."  See 28 C.F.R. § 550.58

(1995); 60 Fed.Reg. 27,692, at 27,695; BOP Program Statement No.

5162.02, § 9 (July 24, 1995).

Following the promulgation of the 1995 regulation, various

Courts of Appeals reached differing conclusions on the question

of whether the Bureau had discretion to further define a crime of

violence as an offense involving a firearm, and thus exclude from

eligibility for the early release incentive those prisoners who

6

were incarcerated for such offenses.  See generally Lopez v.
Davis, 531 U.S. 230, 234-35 (2001).

In light of the split among the Circuits, the Bureau
promulgated an interim regulation on October 15, 1997, and made
the regulation effective approximately one week prior, on October
9, 1997.  28 C.F.R. § 550.58(a)(1)(vi)(B) (1997); 62 Fed.Reg.
53,690.  The 1997 interim regulation, like the one it superceded,
made ineligible for the early release incentive those prisoners
incarcerated for an offense that involved the possession, use, or
carrying of a firearm.  28 C.F.R. § 550.58(a)(1)(vi)(B) (1997).
The 1997 interim regulation differs from the 1995 regulation by
relying on "the discretion allotted to the Director of the Bureau
of Prisons in granting a sentence reduction to exclude
[enumerated categories of] inmates," 62 Fed.Reg. at 53,690,
rather than purporting to define the statutory terms "prisoner
convicted of a nonviolent offense" or "crime of violence."

In Lopez v. Davis, the Supreme Court held that the 1997
interim regulation's categorical exclusion of prisoners based on
their involvement with firearms in connection with the commission
of a felony was a permissible exercise of the Bureau's
discretion.

> According to the Bureau, Congress simply "did not
> address how the Bureau should exercise its discretion
> within the class of inmates who satisfy the statutory
> prerequisites for early release."  Because Congress
> left the question unaddressed, the Bureau maintains,
> the agency may exclude inmates either categorically or

7

> on a case-by-case basis, subject of course to its
> obligation to interpret the statute reasonably, see
> [Chevron U.S.A., Inc. v. Nat. Res. Def. Council, 467
> U.S. 837, 844 (1984)], in a manner that is not
> arbitrary or capricious, see 5 U.S.C. § 706(2)(A).  In
> this instance, the Bureau urges, it has acted
> reasonably: Its denial of early release to all inmates
> who possessed a firearm in connection with their
> current offense rationally reflects the view that such
> inmates displayed a readiness to endanger another's
> life; accordingly, in the interest of public safety,
> they should not be released months in advance of
> completing their sentences.
>
> We agree with the Bureau's position. ...
>
> ... [W]e further hold that the regulation
> excluding Lopez is permissible.  The Bureau reasonably
> concluded that an inmate's prior involvement with
> firearms, in connection with the commission of a
> felony, suggests his readiness to resort to life-
> endangering violence and therefore appropriately
> determines the early release decision.

Lopez, 532 U.S. at 239-40, 244 (citation and footnotes omitted).

The Court declined to consider the arguments of various amici

that the 1997 interim regulation violated the notice-and-comment

provisions of the APA, as that argument had not been raised or

decided below, or presented in the petition for certiorari.  531

U.S. 230, 244 n.6.

The commentary accompanying publication of the 1997 interim

regulation recited the history surrounding the Bureau's previous

attempts to regulate in this area, including the 1995 interim

regulation, which attempted to define the term "crime of

violence," and the subsequent split of authority among the

federal courts regarding that regulatory definition.  The

commentary further noted that the Bureau was "publishing this change as an interim rule in order to solicit public comment while continuing to provide consideration for early release to qualified inmates." 62 Fed.Reg. at 53,690. Nevertheless, the effect of the implemented interim regulation was to deny program eligibility to certain categories of inmates confined at that time and until promulgation of a final regulation. The commentary to the interim regulation further provided that comments on the interim rule were due on December 15, 1997, and that the comments would be considered before final action was taken.

Three years later, on December 22, 2000, the Bureau replaced the 1997 interim regulation with a final regulation, which adopted the 1997 interim regulation without change. See 65 Fed.Reg. 80,745. The final regulation was effective as of December 22, 2000. Id. The commentary accompanying the final regulation noted that the Bureau had received and considered approximately 150 comments from individuals and organizations, 138 of which were identical. Id. at 80,747. Thus, the 2000 final regulation read, in pertinent part, as follows:

Consideration for early release.

An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment

9

may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.

(a)   Additional early release criteria.

(1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:

...

(vi) Inmates whose current offense is a felony:

...

(B) That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), ...

28 C.F.R. § 550.58 (2000).

BOP Program Statement 5162.04, <u>Categorization of Offenses</u>, specifically provides that inmates convicted of violating 18 U.S.C. § 922(g) are not eligible for early release under the Residential Drug Abuse Treatment Program.

The Administrative Procedure Act ("APA") requires, with exceptions not relevant here, that proposed rules be published in the Federal Register, not less than 30 days before the proposed rule's effective date, and provide a period for interested persons to comment on the proposed rule, which comments are to be considered by the agency prior to adopting the rule.  <u>See</u> 5 U.S.C. § 553(b), (c), (d).

10

Following promulgation of the 1997 interim regulation, the United States Court of Appeals for the Ninth Circuit determined that the 1997 interim regulation was invalid, for failure to follow the notice-and-comment requirements of the APA.  <u>See</u>, <u>Paulsen v. Daniels</u>, 413 F.3d 999 (9th Cir. 2005).  The 2000 final rule, however, complied with the notice-and-comment requirements.

More recently, the Court of Appeals for the Ninth Circuit has held that the final 2000 rule is invalid, nevertheless, as "arbitrary and capricious" in violation of § 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A), for failure to set forth a rationale for its categorical exclusion rule.  <u>Arrington v. Daniels</u>, 516 F.3d 1106 (9th Cir. 2008).

In <u>Arrington</u>, the Ninth Circuit held that the Bureau's promulgation of § 550.58 was "arbitrary and capricious" because the Bureau failed to state, in the administrative record, an adequate rationale for its categorical exclusion of felons convicted of crimes that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives.

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical <u>exclusion</u> rule.  The Bureau's stated desire for uniformity could have been accomplished in any number of ways.  For example, the Bureau could have achieved uniformity by categorically <u>including</u> prisoners with non-violent convictions involving firearms, thus making them eligible for early release: a result that would have been entirely consistent with the statute's aim of offering incentives for prisoner participation in residential substance abuse programs.  Instead, it

chose to achieve uniformity by categorically <u>excluding</u>
such prisoners from eligibility.  Although either
choice in all likelihood would have withstood judicial
scrutiny, the Bureau offered no explanation for why it
exercised its discretion to select one rather than the
other.  The agency's lack of explanation for its choice
renders its decision arbitrary and capricious.

<u>Arrington</u>, 516 F.3d at 1114 (emphasis in original) (citation

omitted).  The Ninth Circuit refused to consider the offered

rationale that offenders with convictions involving firearms pose

an increased risk to the public.  The public safety rationale,

the Ninth Circuit concluded, was not stated in the record and was

merely a post hoc rationalization.

Virtually every court to consider the matter has rejected

the rationale of <u>Arrington</u>.  <u>See</u> <u>Snipe v. Dept. of Justice</u>, 2008

WL 5412868 (N.D.W.Va. Dec. 23, 2008) (collecting cases).  The

Court of Appeals for the Sixth Circuit has held that the <u>Lopez</u>[4]

decision "does directly control" the argument that the 2000

regulation is arbitrary.  <u>See</u> <u>Harrison v. Lamanna</u>, 19 Fed.Appx.

---

[4] As noted above, in <u>Lopez v. Davis</u>, 531 U.S. 230, 240
(2001), the Supreme Court agreed with the Bureau of Prisons'
argument that "the agency may exclude inmates either
categorically or on a case-by-case basis, subject of course to
its obligation to interpret the statute reasonably, see <u>Chevron[</u>
<u>v. Natural Resources Defense Council</u>, 467 U.S. 837, 884 (1984)],
in a manner that is not arbitrary or capricious, see 5 U.S.C.
§ 706(2)(A)."  The Court went on, "Having decided that the Bureau
may categorically exclude prisoners based on their preconviction
conduct, we further hold that the [1997 interim regulation] is
permissible.  The Bureau reasonably concluded that an inmate's
prior involvement with firearms, in connection with the
commission of a felony, suggests his readiness to resort to life-
endangering violence and therefore appropriately determines the
early release decision."  531 U.S. at 244 (footnote omitted).

12

342, 2001 WL 1136080 (6th Cir. 2001).   See also Cushenberry v. Federal Medical Center, 530 F.Supp.2d 908, 913 (E.D. Ky. 2008) (same); Robinson v. Gonzaales, 493 F.Supp.2d 758, 763-64 (D. Md. 2007) (same); Chevrier v. Marberry, 2006 WL 3759909, *4-5 (E.D. Mich. 2006) ("There is nothing unreasonable in the BOP's common-sense decision that there is a significant potential for violence from criminals who possess firearms.").

In addition, the Court of Appeals for the Eighth Circuit has explicitly rejected the Arrington standard that the rationale for agency action, in a rulemaking case, must appear "on the record."

> The APA provides that a reviewing court must set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  Because this is a deferential standard, "the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." SEC v. Chenery Corp., [318 U.S. 80, 94 (1943)].  "The courts may not accept appellate counsel's post hoc rationalizations for agency action." Burlington Truck Lines, Inc. v. United States, [371 U.S. 156, 168 (1962)].  However, courts "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc., v. Arkansas-Best Freight Sys., Inc., [419 U.S. 281, 286 (1974)].
>
> These general principles, like 5 U.S.C. § 706(2)(A) itself, apply to both agency rulemaking and adjudication that is subject to the APA.  But most Supreme Court cases applying these principles-such as Chenery, Burlington Truck Lines, and Bowman-involved agency adjudications conducted under 5 U.S.C. §§ 556-57 (or their APA predecessor), which require that agency decisions be based on the administrative record, and define what that record must include.  This case involves agency rulemaking under 5 U.S.C. § 553, which

provides only that the agency shall publish notice of
the proposed rulemaking, afford interested persons an
opportunity to participate, and "incorporate in the
rules adopted a concise general statement of their
basis and purpose," § 553(c).  The Supreme Court has
repeatedly emphasized "that generally speaking this
section of the Act established the maximum procedural
requirements which Congress was willing to have the
courts impose upon agencies in conducting rulemaking
procedures."  Vt. Yankee Nuclear Power Corp. v. Natural
Res. Def. Council, Inc., [435 U.S. 519, 524 (1978)],
and cases cited.  Under § 553, an agency determination
need not be made "on the record" unless the statute
being applied so requires.  United States v.
Allegheny-Ludlum Steel Corp., [406 U.S. 742, 756-57
(1972)].  Thus, the Ninth Circuit panel in Arrington
erred when it disregarded the BOP's public safety
rationale simply because the court could not find that
rationale in an "administrative record" which the court
never defined but seemed to limit to the BOP's Federal
Register notice in 2000 finalizing the previously
interim rule.

     Though rulemaking decisions, which are prospective
and legislative in nature, need not be made on a
confined administrative record, they still must be
reviewed under § 706(2)(A) and "upheld, if at all, on
the basis articulated by the agency itself."  Motor
Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut.
Auto. Ins. Co., [463 U.S. 29, 50 (1983)]; see Menorah
Med. Ctr. v. Heckler, 768 F.2d 292, 295 (8th Cir.1985).
In State Farm, the Court refused to enforce an agency
order rescinding a prior rule, explaining that "an
agency changing its course by rescinding a rule is
obligated to supply a reasoned analysis for the change
beyond that which may be required when an agency does
not act in the first instance." [463 U.S. at 42.]   We
have construed State Farm as requiring a fuller
explanation when "a new rule reflects a departure from
the agency's prior policies."  Macon County Samaritan
Mem'l Hosp. v. Shalala, 7 F.3d 762, 765-66 (8th
Cir.1993).  Here, the BOP has consistently sought to
implement the same substantive policy in the face of
continued judicial resistance.  In these circumstances,
it is appropriate to discern the reasons for the
agency's final rule from the various prior interim
rules, Program Statements, and litigation positions
reflecting that consistent policy.  The Supreme Court

14

> discerned that public safety was the basis for the
> BOP's exclusion of firearm offenders and concluded that
> the agency's rule was substantively reasonable in
> <u>Lopez</u>, [531 U.S. at 244.]  That, we conclude, is all 5
> U.S.C. §§ 553(c) and 706(2)(A) require.  <u>Accord</u>
> <u>Harrison v. Lamanna</u>, 19 Fed.Appx. 342 (6th Cir.2001)
> (unpublished).

<u>Gatewood v. Outlaw</u>, 560 F.3d 843, 846 –848 (8th Cir.  2009)

(footnotes omitted).

On January 14, 2009, a new final rule was published in the

Federal Register at 74 FR 1892 <u>et seq</u>, which finalized three

previously-published proposed rules on the drug abuse treatment

program.  In publishing the new final rule, the BOP provided a

more detailed explanation of its rationale for excluding from

eligibility for early release inmates convicted of offenses

involving he carrying, possessing, or using of firearms.

> [I]n the correctional experience of the Bureau, the
> offense conduct of both armed offenders and certain
> recidivists suggests that they pose a particular risk
> to the public.  There is a significant potential for
> violence from criminals who carry, possess or use
> firearms.  As the Supreme Court noted in <u>Lopez v.</u>
> <u>Davis</u>, "denial of early release to all inmates who
> possessed a firearm in connection with their current
> offense rationally reflects the view that such inmates
> displayed a readiness to endanger another's life."  <u>Id.</u>
> at 240.  The Bureau adopts this reasoning.  The Bureau
> recognizes that there is a significant potential for
> violence from criminals who carry, possess or use
> firearms while engaged in felonious activity.  Thus, in
> the interest of public safety, these inmates should not
> be released months in advance of completing their
> sentences.
>
> It is important to note that these inmates are not
> precluded from participating in the drug abuse
> treatment program.  However, these inmates are not
> eligible for early release consideration because the

15

specified elements of these offenses pose a significant
threat of dangerousness or violent behavior to the
public.  This threat presents a potential safety risk
to the public if inmates who have demonstrated such
behavior are released to the community prematurely.
Also, early release would undermine the seriousness of
these offenses as reflected by the length of the
sentence which the court deemed appropriate to impose.

74 FR 1892, 1895 (Jan. 14, 2009).  Effective March 16, 2009, 28

C.F.R. § 550.58 was superseded by a new regulation which appears

at 28 C.F.R. § 550.55.  The new regulation applies to anyone

whose clinical interview (to qualify for participation in the

Residential Drug Abuse Treatment Program) takes place on or after

March 16, 2009.  To coincide with the effective date of the new

regulation, the BOP rescinded Program Statement 5162.04 and

replaced it with Program Statement 5162.05, also effective March

16, 2009.

Pursuant to Program Statement 5162.05, as an exercise of the

discretion vested in the Director of the Bureau of Prisons,

eligibility for early release upon successful completion of the

Residential Drug Abuse Treatment Program is denied for inmates

whose current offense is a felony that involved the carrying,

possession, or use of a firearm.  More specifically, inmates

convicted of violating 18 U.S.C. § 922(g) are prohibited from

early release upon successful completion of the Residential Drug

Abuse Treatment Program.  In addition, under the Program

Statement, prisoners who received a two-level "bump" under

16

U.S.S.G. 2D1.1, for possession of a firearm during the commission of a drug offense, are prohibited from early release.

It is upon the <u>Arrington</u> decision that Petitioner relies here, in his challenge to Program Statement 5162.05.

IV.   <u>ANALYSIS</u>

Petitioner argues that Program Statement 5162.05 was implemented in violation of the Administrative Procedure Act, because it is "arbitrary and capricious," because the Bureau of Prisons does not have authority to pass a rule categorically excluding certain prisoners from early release, because the BOP did not follow the required "notice and comment" procedures in implementing its regulations, because the BOP does not have authority to deny sentence reductions for prisoners with a 2D1.1(b)(1) sentencing enhancement, and because it is a violation of equal protection and due process to apply the regulation differently to prisoners outside of the Ninth Circuit, which has invalidated the BOP regulation. <u>See</u> <u>Arrington v. Daniels</u>, 516 F.3d 1106 (9th Cir. 2008).   Thus, Petitioner contends that his categorical exclusion from consideration for early release, pursuant to the 2009 final rule, is unlawful.[5]

---

[5] Petitioner alternatively refers to the regulation and to the Program Statement.   The Court construes Petitioner's challenge as being to both the 2009 regulation and its implementing Program Statement.

17

As a preliminary matter, the Court notes that Petitioner admits that he has not exhausted his administrative remedies.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if

18

the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); <u>Carling v. Peters</u>, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Here, Petitioner has failed to allege facts that establish that exhaustion of his administrative remedies would be futile or would expose him to irreparable harm.  For that reason, alone, the Petition is subject to dismissal.  In addition, however, Petitioner has failed to allege facts establishing that he is entitled to relief.

Specifically with respect to Petitioner's claim that the regulation and Program Statement are "arbitrary and capricious" in violation of the Administrative Procedure Act, the "arbitrary and capricious" standard of review is "narrow."  A federal court may "find that an action is arbitrary and capricious if the agency relied on facts other than those intended by Congress, did not consider 'an important aspect' of the issue confronting the agency, provided an explanation for its decision which 'runs counter to the evidence before the agency,' or is entirely implausible."  <u>Rite Aid of Pennsylvania, Inc. v. Houstoun</u>, 171 F.3d 842, 853 (3d Cir. 1999) (quoting <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43-44 (1983)).  Moreover, a federal court "must 'uphold [an agency's] decision of less than ideal clarity if the agency's

path may reasonably be discerned.'" Rite Aid, 171 F.3d at 853
(quoting Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43) (internal
citations omitted).  Indeed, "on occasion, regulations with no
statement of purpose have been upheld where the agency's purpose
was considered obvious and unmistakable."  Citizens to Save
Spencer County v. U.S. Environmental Protection Agency, 600 F.2d
844, 884 (D.C. Cir. 1979) (emphasis added) (quoted with approval
in Muolo v. Quintana, 2009 WL 82491 (W.D. Pa. Jan. 8, 2009)).

        The Court of Appeals for the Third Circuit has explicitly
held that the Bureau of Prisons articulated a sufficient
rationale for the 2000 rule, codified at 28 C.F.R.
§ 550.58(a)(1)(vi)(B), to satisfy the "arbitrary and capricious
standard set forth in APA § 706(2)(A).  The Court of Appeals held
that the rationale could "reasonably be discerned" from the
regulatory history and attendant litigation.  See Gardner v.
Grandolsky, 585 F.3d 786 (3d Cir. 2009).  See also Muolo v.
Quintana, 345 Fed.Appx. 736 (3d Cir. 2009).

        The Court of Appeals noted that the BOP's efforts to
categorically exclude felons convicted of possession of a
dangerous weapon from eligibility for early release have remained
consistent since 1995, that the BOP Program Statements have
consistently provided a "public safety" rationale for the
exclusion, and that the Supreme Court, in Lopez, upheld both the
reasonableness of the 1997 interim regulation and the BOP's

                                   20

public safety rationale for the regulation.  <u>See</u> <u>Gardner</u>, 585
F.3d at 792-93 (citing <u>Gatewood v. Outlaw</u>, 560 F.3d 843 (8th Cir.
2009).

The same reasoning applies to the <u>2009</u> regulation challenged
here.  The public safety rationale is unchanged since 1995 and
was expressed, even more explicitly, in the process of enactment
of the 2009 regulation.  The 2009 regulation, and its
implementing Program Statement, are not "arbitrary and
capricious."

The <u>Lopez</u> decision expressly governs the argument that the
Bureau of Prisons lacks authority to categorically exclude
certain classes of prisoners from the early release program.
<u>Lopez v. Davis</u>, 531 U.S. 230, 240 (2001).

Nor is there any defect in the "notice and comment"
procedure employed in the enactment of the 2009 final regulation.
The proposed regulations were published in advance, and the
public received the appropriate opportunity for comment.
Moreover, the "notice and comment" procedure does not apply to
the Program Statement, an agency "interpretive rule" as opposed
to a "legislative rule."  5 U.S.C. § 553(b).

> Legislative rules are subject to the notice and comment
> requirements of the APA because they work substantive
> changes in prior regulations or create new law, rights,
> or duties. [Interpretive] rules, on the other hand,
> seek only to interpret language already in properly
> issued regulations.... [Interpretive], or procedural,
> rules do not themselves shift the rights or interests
> of the parties, although they may change the way in

> which the parties present themselves to the agency....
> [Interpretive] or procedural rules and statements of
> policy are exempted from the notice and comment
> requirement of the APA.

SBC Inc. v. FCC, 414 F.3d 486, 497-98 (3d Cir.2005) (quotations
and citations omitted).

Bureau of Prisons program statements generally are construed
as internal agency guidelines, "akin to an 'interpretive rule'
that 'do[] not require notice and comment.'" Reno v. Koray, 515
U.S. 50, 61 (1995) (quoting Shalala v. Guernsey Mem. Hosp., 514
U.S. 87, 99 (1995)).  Certainly, the Program Statement at issue
here, which implements the statute and properly-promulgated
regulations governing the Residential Drug Abuse Treatment
Program, are interpretive rules exempt from the APA "notice and
comment" requirement.  See, e.g., Moyeda v. Pearson, 2009 WL
1044316 (S.D. Miss. Apr. 17, 2009) (rejecting claim that APA
"notice and comment" rules apply to BOP program statements
implementing exclusion of inmates with convictions involving
firearms from early release eligibility under Residential Drug
Abuse Treatment Program); Mora-Meraz v. Thomas, 2009 WL 839479
(D. Ore. March 30, 2009) (rejecting argument that APA "notice and
comment" rules apply to Program Statement 5330.10); Huerta v.
Berkebile, 2009 WL 230163 (N.D. Tex. Jan. 30, 2009) (rejecting
argument that APA "notice and comment" rules apply to Program
Statement 5162.04); Minotti v. Whitehead, 584 F.Supp.2d 750, 763
(D.Md. 2008) (same); Holloway v. Marberry, 2007 WL 2178314 (E.D.

Mich. July 30, 2007) (same); <u>Johnson v. Holinka</u>, 2007 WL 1446476
(D.Minn. May 14, 2007) (same, with respect to Program Statements
5162.04 and 5330.10); <u>Kotz v. Lappin</u>, 515 F.Supp.2d 143, 150-51
(D.D.C. 2007) (rejecting argument that APA "notice and comment"
rules apply to Program Statement 5331.01, which provides that
inmates may only once earn early release for successful
completion of the Residential Drug Abuse Treatment Program).

       In addition, to the extent the Petition asserts claims that
the BOP violated Petitioner's equal protection and due process
rights by continuing to enforce its early release regulations as
written, except in the Ninth Circuit, pursuant to the <u>Arrington</u>
decision, the argument is patently meritless.  <u>See</u>, <u>e.g.</u>, <u>Caro v.
Ziegler</u>, 2009 WL 1872977 (N.D.W.Va. June 29, 2009); <u>Mack v.
Eichenlaub</u>, 2009 WL 1849961 (N.D. Fla. June 26, 2009), <u>R&R
adopted</u>, 2009 WL 2365706 (N.D. Fla. June 29, 2009); <u>Carver v.
Chapman</u>, 2009 WL 1651512 (N.D. Tex. June 11, 2009); <u>King v.
Federal BOP</u>, 2009 WL 274948 (D.S.C. March 23, 2009), <u>affirmed</u>,
2009 WL 2337116 (4th Cir. July 30, 2009); <u>Norcutt v. Zych</u>, 2009
WL 514083 (E.D. Mich. March 2, 2009); <u>Minotti v. Whitehead</u>, 584
F.Supp.2d 750, 760 n.12 (D.Md. 2008) (also noting that prisoners
have no due process right to early release).

       For all of the foregoing reasons, Petitioner is not entitled
to relief on this Petition.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be dismissed with prejudice.   An appropriate order follows.


<u>s/Renée Marie Bumb</u>
Renée Marie Bumb
United States District Judge

Dated: <u>September 1, 2010</u>

24